

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Geo. H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-1118
Re: Construction of S. B. No. 89,
Acts 46th Legislature.

We are in receipt of your letter of July 11,
1939, which reads in part as follows:

"Senate Bill No. 89, a copy of which is
enclosed, donated certain State taxes to the
following counties:

"Jasper                Houston
Sabine                 Tyler
San Augustine          Angelina
Shelby                 San Jacinto
Trinity                Walker

"A question has arisen as to whether the
donation covers the loss of taxes in districts
in the counties, such as schools and roads, as
well as the county ad valorem taxes.

"* * *

"Please advise this department whether or
not the law in addition to donating the county
ad valorem losses in each county, also donates
all subdivision losses, such as schools, roads,
cities and towns."

Section 1 of S. B. No. 89, Acts 46th Legisla-
ture, directs the assessor and collector of taxes for
the named counties to ascertain and report to the com-
missioners' court of each of such counties the number
of acres of land purchased or leased by the Federal Gov-
ernment in each county. Under Section 2 the commis-
sioners' court, at their regular annual meeting as a

Honorable Geo. H. Sheppard, Page 2

Board of Equalization fixes the valuation upon such lands and the court "shall at the same time determine the amount of taxes that said county and precincts and districts has lost as a result of the Federal Government having purchased or leased said land." As provided in Section 3 the assessor and collector of taxes is then required to make an itemized report showing the valuation fixed by the Board of Equalization, "the amount of county ad valorem taxes that would have accrued thereon," were they not exempt by reason of the Federal purchase, "based upon such valuations and fixed at the prevailing rate for the county ad valorem taxes on lands similarly situated. The assessor and collector of taxes shall show in said report the total amount of county ad valorem taxes which would have been assessed against all lands within said county owned or leased by the Federal Government, and shall forward said report to the Comptroller of Public Accounts at Austin."

Section 5 makes the donation in the following language:

"There is hereby donated, and granted to each of the counties of Jasper, Sabine, San Augustine, Shelby, Trinity, Houston, Tyler, Angelina, San Jacinto, and Walker, all of the State ad valorem taxes necessary to reimburse said county for the loss sustained by said county or counties and not to exceed this amount, levied and collected in each respective county for general revenue purposes upon property and from persons in each respective county including the rolling stock of railroads, or so much of such State ad valorem taxes collected as shall be equal to the amount to be determined in accordance with Section 4 hereof. The taxes hereby donated shall be levied and collected as now provided by law except that the assessor and collector of taxes in each respective county shall forward his report to the State Comptroller of Public Accounts as provided by law, and shall pay over to the Treasurer of each respective county all moneys collected by him at the end of each month, except such amounts as are allowed by law for collecting and assessing same, and shall forward a duplicate copy of the receipts given him by the county treasurer for said money to the Comptroller."

A slight transposition of the wording of Section 5 may render its meaning more definite:

"There is hereby donated, and granted to each of the counties of Jasper, Sabine, San Augustine, Shelby, Trinity, Houston, Tyler, Angelina, San Jacinto, and Walker, all of the State ad valorem taxes levied and collected in each respective county for general revenue purposes . ..., necessary to reimburse said county for the loss sustained by said county or counties, and not to exceed this amount, or so much of such State ad valorem taxes collected as shall be equal to the amount to be determined in accordance with Section 4 hereof . . ."

Section 4, after directing the Comptroller to check the correctness of the report required in Section 3, provides:

"The total amount of county ad valorem taxes which would have been assessed against the lands owned or leased by the Federal Government within such county, as shown by the report of the county tax assessor and collector, and approved by the Comptroller of Public Accounts, shall be the measure of the amount of the State ad valorem tax to be donated, and granted to such county, as hereinafter provided."

Each and every reference in the Act is to county ad valorem taxes and losses sustained by counties. The report of the assessor and collector under Section 3 is to show the loss of county ad valorem taxes in total and itemization. The measure provided in Section 4 is based on "the total amount of county ad valorem taxes" which would have been assessed on such lands. The amount specified in Section 5 is the sum "necessary to reimburse said county.for the loss sustained by said county." The emergency clause recites that:

"The fact that the United States Government has purchased or leased a large acreage of cut over lands in the counties named in Section 1 hereof, thereby taking off of the tax rolls great valuations for taxable purposes

in each of such counties; and the fact that the loss of such taxable values in such counties render them incapable of carrying on county government and paying the expenses incident thereto; and the further fact that said counties have not yet recovered from the disastrous results incident to the calamitous occurrences hereinabove enumerated create an emergency, etc."

The only provision which would tend to indicate that losses by subdivisions or districts such as schools, roads, cities and towns might be considered, is that part of Section 2 which provides that, "the said court shall at the same time determine the amount of taxes that said county and precinct and districts has lost as a result of the Federal Government having purchased or leased said land." This section does not purport to set a measure on the amount of the donation but merely directs a finding to be made by the Board of Equalization, other sections discussed above specifically limit the amount of the grant. The requirement that the court make this finding is not without meaning. Section 5a, which enumerates the purposes for which the money may be used provides:

"The taxes herein donated, and granted to counties herein are hereby allocated to the commissioners' court of the respective counties herein named to be used by said commissioners for t he purpose of carrying on the governing activities of the county, public improvements, and discharge of any county or precinct indebtedness, and may be by said commissioners' court allocated to any other political subdivision of the county which has sustained loss as a result of the Federal Government purchasing land within the said political subdivision."

Obviously the findings of loss sustained by precincts and districts as required by Section 2 would be necessary to determine which political subdivisions or districts would be eligible for an allocation under Section 5a and would serve as an equitable and just basis for a determination by the commissioners' court of the amount to be allocated to such subdivisions.

Honorable Geo. H. Sheppard, Page 5

It is our opinion that Senate Bill No. 89, Acts 46th Legislature, does not donate all subdivision losses, such as schools, roads, cities and towns, in addition to donating the county ad valorem losses in each county.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Cecil C. Cammack
Assistant

APPROVED JUL 31, 1939
CCC:LM

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN